UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRET RIVERO AND | * | |
| JAMIE VARNADO, individually | * | CIVIL ACTION NO.:_____ |
| and on behalf of all others | * | |
| similarly situated, | * | JUDGE:_____ |
| Plaintiffs | * | |
| | * | MAGISTRATE:_____ |
| v. | * | |
| | * | |
| FCA US LLC | * | |
| | * | |

\* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Bret Rivero and Jamie Varnado ("Plaintiffs"), individually and on behalf of all others similarly situated, alleges the following against FCA US, LLC ("Defendant" or "FCA"), based where applicable on personal knowledge, information and belief, and the investigation of counsel.

## INTRODUCTION

1. This action concerns fraud perpetrated on consumers and regulators by the world's seventh largest auto manufacturers.

2. From 2014 through 2016, roughly 104,000 diesel Chrysler and Jeep vehicles sold in the United States were sold with software installed that enabled the vehicles to emit far more pollutants than emissions laws allow. The vehicles involved were the 2014 to 2016 model year Dodge Ram 1500 pickup trucks and Jeep Grand Cherokees with 3.0-liter diesel engines. The software reduced the amount of nitrogen oxide emitted during emissions tests, obscuring the fact that they release more of the pollutant than is allowed under the Clean Air Act.

3. According to the United States Environmental Protection Agency ("EPA"), the technology was brought to light after it expanded its vehicle testing to look for so-called defeat devices in September 2015 following a similar scandal at Volkswagen.

4. Defendant not only intentionally misrepresented the ability of the vehicles to deliver legally mandated emissions, but Defendant created a way to make it appear to regulators as if the vehicles at issue delivered on this promise and complied with law.

**PARTIES**

5. Plaintiff Bret Rivero is a citizen of the State of Louisiana, residing in Livingston Parish, Louisiana. He is the original owner of a 2015 Dodge Eco Diesel pickup truck, with a 3.0-liter diesel engine.

6. Plaintiff Jamie Varnado is a citizen of the State of Mississippi, residing in Picayune, Mississippi. He is the original owner of a 2016 Dodge Eco Diesel pickup truck, with a 3.0-liter diesel engine.

7. FCA US LLC ("FCA"), also known as Fiat Chrysler or simply Chrysler, is the American subsidiary of Fiat Chrysler Automobiles N.V., an Italian controlled automobile manufacturer registered in the Netherlands with headquarters in London, U.K. FCA's headquarters are located in Auburn Hills, Michigan.

7. At all relevant times, FCA manufactured, distributed, sold, leased and warranted the vehicles with the fraudulent software under the Dodge and Jeep names throughout the United States. The software, engine, and engine control systems were all designed by FCA or its agents. FCA also developed and distributed its owners' manuals, warranty materials, advertisements and other promotional materials related to the vehicles containing the software.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant because it markets and sells vehicles containing the fraudulent software in this Judicial District, including but not limited to Rivero, who resides in Livingston, Louisiana and who purchased his vehicle, containing the software, at Community Automotive in Hammond, Louisiana.

10. Venue is proper in this District under 28 U.S.C. 1391(b) because Defendant has caused harm to Class members residing in this District, including but not limited to Rivero, who resides in Livingston, Louisiana and who purchased his vehicle, containing the software, at Community Automotive in Hammond, Louisiana.

## DEFENDANT'S MISCONDUCT TOLLS THE STATUTE OF LIMITATIONS

**A. Discovery Rule Tolling**

11. Plaintiffs and members of the proposed Class could not have discovered that FCA concealed and misrepresented the true emissions levels of its vehicles through the use of fraudulent software.

12. Neither Plaintiffs nor members of the Class could reasonably have discovered, or have reason to suspect, that FCA intentionally concealed information within its knowledge from federal and state regulators, FCA's dealerships, and consumers.

13. Thus, even a reasonable and diligent investigation by consumers could not have discovered that FCA solely possessed information about the existence of its sophisticated emissions fraud scheme. Plaintiffs and Class members had no way of learning that FCA was flouting applicable federal and state emissions standards as well as consumer law.

### B. Tolling Due To Fraudulent Concealment

14. All applicable statutes of limitation have been tolled by FCA's active fraudulent concealment of the facts alleged in this Complaint.

### C. Estoppel

15. FCA was under a continuous duty to disclose to consumers, including Plaintiffs and the other Class members, the facts that it knew about the emissions, fuel economy and performance of the vehicles equipped with the fraudulent software, and of those vehicles' inability to comply with federal and state emission standards.

16. FCA violated this duty and unlawfully circumvented federal and state emission standards through the use of the fraudulent software, and FCA intentionally misrepresented the ability of the subject vehicles to comply with state and federal law regulating vehicle emissions and clean air.

17. FCA is therefore estopped from relying on any statutes of limitation defenses in this action.

## FACTUAL BACKGROUND

18. Defendant designed and sold cars that were designed to, and did, mislead consumers and regulators about the vehicles' emissions. Despite the branding of its "Eco Diesel," suggesting an environmental quality that it utterly lacked, Defendant sold cars that

produced pollution higher than advertised, and intentionally concealed the truth about those trucks through a sophisticated scheme involving fraudulent software.

**A. FCA Sells The "ECO" Diesel Image To Consumers**

19. For years, FCA advertised its diesel vehicles as fuel efficient trucks with low emissions.

20. Part of FCA's success owes to the promotion of their diesel trucks as "ECO," implying that they are somehow ecologically friendly vehicles. In fact, "ECO" is a marketing term used by FCA to market the vehicles at issue in this action.

**B. FCA Intentionally Concealed Its Vehicles' Excessive And Illegal Pollution Emissions.**

21. On January 12, 2017, the EPA accused FCA of installed sophisticated software in the Dodge and Jeep diesel trucks with 3.0-liter engines that allowed the trucks to emit far more pollutants than the law allows. This software produced and used by FCA is akin to a "defeat device" as defined in the Clean Air Act.

22. Because of this software, Defendant's diesel trucks can seemingly meet emissions standards while emitting nitrogen oxides (NOx) in far higher amounts than the standard allowed under federal and state laws and regulations during the normal operation of the vehicles.

23. The Clean Air Act sets emissions standards for vehicles and requires vehicle manufacturers to certify to the EPA that vehicles sold in the United States meet applicable federal emissions standards. Under federal law, cars equipped with fraudulent software, which reduces the effectiveness of emissions control systems during normal driving conditions, cannot be certified. FCA violated the Clean Air Act, defrauded its customers, and engaged in unfair competition by manufacturing and selling vehicles with fraudulent software that allowed for higher levels of emissions than were certified by the EPA.

### C. FCA's Misconduct Has Injured Class Members

24. While the EPA may yet order Defendant to recall vehicles equipped with the fraudulent software, purchasers of the subject vehicles have and will continue to suffer significant harm. First, the only way for FCA to make the vehicles comply with emissions standards will be to significantly reduce the vehicles' horsepower, torque and fuel efficiency. Thus, if made EPA compliant, Class members will suffer actual harm and damages because their vehicles will no longer perform as advertised and warranted.

25. Second, Class members' vehicles will suffer from a significant diminution value by being made EPA compliant, because not only did Class members overpay for their vehicles, but they will be forced to pay much more to fuel their less fuel efficient vehicles.

26. Owners of vehicles equipped with the fraudulent software have suffered losses of money or property because of FCA's unfair, deceptive, and/or fraudulent trade practices, and its failures to disclose the true emissions of the vehicles.

27. Had Plaintiffs and the Class members known of the fraudulent software at the time they purchased or leased their vehicles, they would not have purchased or leased their vehicles, or they would have paid less than they did. Even if FCA recalls the vehicles containing the fraudulent siftware and degrades the engine performance of the trucks to make them compliant with EPA standards, Plaintiffs and Class members will be forced to spend more on fuel and will not receive the advertised performance of their vehicles. The recalled vehicles will be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of these vehicles will not be able to recoup the expected value of these vehicles in the future.

## PLAINTIFFS' FACTS

28. Bret Rivero the owner of a 2015 Dodge Eco Diesel pickup truck, with a 3.0-liter diesel engine.

29. Jamie Varnado is the owner of a 2016 Dodge Eco Diesel pickup truck, with a 3.0-liter diesel engine.

30. Both Rivero and Varnado purchased their respective truck because they were interested in fuel efficiency. They relied on Defendant's statement that the Eco Diesel was a clean, low-emission pickup truck, in deciding to purchase the vehicle.

31. Neither Rivero nor Varnado would not have purchased the truck if thy had known that the emissions were much higher than advertised and the engine was not "ECO."

## CLASS ACTION ALLEGATIONS

32. Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who are current or former owners and/or lessees of Dodge Ram 1500 pickup trucks or Jeep Grand Cherokees with 3.0-liter diesel engines, model years 2014 through 2016.

33. Excluded from the Class are individuals who have personal injury claims resulting from the fraudulent software in the Class vehicles. Also excluded from the Class are FCA and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his or her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

34. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis as would be used to prove those elements individual actions alleging the same claim.

35. This action has been brought and may properly be maintained on behalf of the class proposed herein under Federal Rule of Civil Procedure 23.

36. **Numerosity**. The members of the class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs believe that there approximately 104,000 members of the class, the precise number of Class members is unknown at this time, but may be ascertained from FCA's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, or published notice.

37. **Commonality**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including:

   a. Whether FCA engaged in the conduct alleged herein;

   b. Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed vehicles with fraudulent software into the stream of commerce in the United States;

   c. Whether the ECO engine system in the subject vehicles contains a defect in that it does not comply with EPA requirements;

   d. Whether the ECO engine systems in the subject vehicles can be made to comply with EPA standards without substantially degrading the performance or efficiency of the vehicles;

e. Whether FCA knew about the fraudulent software and, if so, how long it possessed this knowledge;

f. Whether FCA designed, manufactured, and distributed the subject vehicles with fraudulent software intended to thwart emissions standards;

g. Whether FCA's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h. Whether Plaintiffs and the other Class members overpaid for their vehicles;

i. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or other injunctive relief; and

j. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

38. **Typicality**. Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through FCA's wrongful conduct as described above.

39. **Adequacy**. Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

40. **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**. FCA has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

41.     **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCA, so it would be impracticable for members of the Class to individually seek redress for FCA's wrongful conduct.

42.     Should individual Class Members be required to bring separate actions, this Court and/or courts throughout the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

**COUNT I**
**(Breach of Express Warranty)**

43.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

44.     By advertising the "ECO" qualities of its diesel engines, Defendant expressly warranted to purchasers of the subject vehicles that the vehicles at least complied with all applicable laws and regulations relating to exhaust emissions. Stated differently, it would be impossible for an automobile to be "ECO" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

45.     Such statements became the basis of the bargain for Plaintiffs and other purchasers of the vehicles because such statements are among the facts a reasonable consumer

would consider to be material in the purchase of a vehicle. Those statements created an express warranty that, under EPA test conditions, the vehicle achieved the stated fuel efficiency for purposes of making fair comparisons with other vehicles.

46. As a result of the foregoing breaches of express warranty, Plaintiffs and other members of the Class have been damaged in that they purchased a vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the vehicles because the vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

**COUNT II**

**(Magnuson-Moss Act (15 U.S.C. §§ 2301, *et seq.*) – Implied Warranty)**

47. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

48. The subject vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

49. Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

50. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

51. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

52. Defendant provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendant warranted that the subject vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

53. Defendant breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

54. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

55. Plaintiffs and the other Class members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract.

56. Nonetheless, privity is not required here because Plaintiffs and other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the subject vehicles and have no rights under the warranty agreements provided with the subject vehicles; the warranty agreements were designed for and intended to benefit consumers.

57. Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

58. The amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

59. Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

**COUNT III**

**(Unjust Enrichment)**

60. Plaintiffs repeat the foregoing allegations as if fully set forth herein.

61. Defendant has been unjustly enriched in that it intentionally sold vehicles with fraudulent software which was intended to mask the fact that the subject vehicles did not comply with applicable automobile exhaust regulations and, in fact, emitted far more pollutant than allowed by those regulations.

62. Plaintiffs and other Class members got less than what they paid for in that the subject vehicles did not comply with applicable environmental regulations.

63. The foregoing did not occur by happenstance or conditions out of Defendant's control. In fact, the vehicles were deliberately designed to comply with environmental regulations only due to the fraudulent software.

**COUNT IV**

**(Negligence)**

64. Plaintiffs repeat the foregoing allegations as if fully set forth herein.

65. Defendant owed Plaintiffs and the Class a duty to treat them reasonably and fairly under the circumstances of their relationship.

66. Whether a duty exists is a question of law. *See Mundy v. Dept. of Health and Human Resources*, 620 So.2d 811 (La. 1993). Whether Defendant breached that duty is a question of fact. *Id.* The determination of whether Defendant's conduct was a cause-in-fact of the plaintiff's injuries is also a factual determination. *See Rando v. Anco Insulations, Inc.,* 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065.

78. FCA willfully and/or negligently breached its duty to Plaintiffs and the Class by failing to abide by the terms of its warranties, by deliberately designing fraudulent software expressly for purposes of thwarting emissions standards, and thus enabling FCA to market the subject vehicles as "ECO," or environmentally friendly, when they were in fact the opposite. In short, FCA is liable unto Plaintiffs and the Class for the damages it caused them. PLAINTIFFS DEMAND A TRIAL BY JURY.

**WHEREFORE**, Plaintiffs, individually and on behalf of other Class members respectfully request that the Court enter judgment in their favor and against FCA, as follows:

A. Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining FCA from continuing the unlawful and fraudulent practices alleged in the Complaint.

C. Injunctive relief in the form of a recall or free replacement program;

D. Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E. Revocation of acceptance;

F. Damages under the Magnuson-Moss Warranty Act;

G. For punitive damages as permitted by law;

H. An order requiring FCA to pay both pre- and post-judgment interests on any amounts awarded;

I. An award of costs and attorneys' fees; and

J. Such other or further relief as may be appropriate.


DATED this 12th day of January, 2017.    PATRICK MILLER LLC

/s/ *Marc R. Michaud*
Marc R. Michaud, T.A. (#28962)
400 Poydras Street, Suite 1680
New Orleans, Louisiana 70130
Telephone: (504) 527-5400
Facsimile: (504) 527-5456
*Attorneys for Plaintiff*